# ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

From an unknown time, but beginning at least in or about August 2017 and continuing through at least in or about August 2018, in the District of Maryland, the Defendant, **EMMANUEL CLEMENT** ("**CLEMENT**"), knowingly combined, conspired, confederated, and agreed with others to conduct financial transactions using the proceeds of specified unlawful activity, that is, wire fraud (in violation of 18 U.S.C. § 1343), with the intent to promote the carrying on of the specified unlawful activity and to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

In order to launder funds as part of the money laundering conspiracy, **CLEMENT** opened a number of bank accounts domiciled in Maryland, including:

(1) Citibank account ending in 3978 ("Citibank x3978"), under the business name Lexcinno Services ("Lexcinno");

(2) Citibank account ending in 4460 ("Citibank x4460"), under the business name A-Tech Services LLC ("A-Tech Services");

(3) Capital One account ending in 5374 ("Capital One x5374"), under the business name Kenrose Global Services LLC ("Kenrose"); and

**Co-conspirator D** also opened a Capital One account ending in 4148 ("Capital One x4148") under the business name Kinson Shoes LLC ("Kinson Shoes") and registered Kinson Shoes with the State of Maryland. According to registration documents, Kinson Shoes was purportedly a shoe company.

Lexcinno, A-Tech Services, and Kenrose were domiciled at **CLEMENT**'s home in Bowie, Maryland. **CLEMENT** registered Lexcinno as a healthcare consulting company, A-Tech Services as a company that sells vacuum components, and Kenrose as a healthcare and general commodities company. Though **CLEMENT** and his co-conspirators represented in registration documents that Lexcinno, A-Tech Services, Kinson Shoes, and Kenrose had legitimate business purposes, those four companies were shell entities that **CLEMENT** and his co-conspirators used for the purpose of laundering fraud proceeds.

On August 16, 2017, Company 4 received an email from **Co-conspirator C**, who posed as a representative from Company 5, which was one of Company 4's suppliers. The email falsely represented that Company 4 was past due on payments owed to Company 5. In this email, **Co-conspirator C** requested a wire transfer of $32,457 to Citibank x3978 (the Lexcinno account).



In 2017, Company 1 (a company in Canada) received an email from **Co-conspirator A**, who posed as an employee in the accounts receivable department of Company 2, which was one of Company 1's suppliers. **Co-conspirator A** falsely represented to Company 1 that Company 1 was past due on its accounts payable to Company 2 and directed Company 1 to wire $20,647 to Citibank x3978 (the Lexcinno account). On August 31, 2017, in response to **Co-conspirator A's** fraudulent email to Company 1, Company 1 sent an interstate money wire transfer of $20,647 to Citibank x3978.

On September 12, 2017, Company 6 sent an international money wire transfer of $1,520,090 to Citibank x4460 (the A-Tech Services account). The wire was solicited under false pretenses and was part of a fraudulent business email compromise scheme perpetrated against Company 6. Thereafter, **CLEMENT** laundered $322,244 of the money that was fraudulently obtained from Company 6. For instance, on September 14, 2017, **CLEMENT** deposited into Citibank x3978 (the Lexcinno account) a $200,000 cashier's check drawn on funds from Citibank x4460 (the A-Tech Services account). This $200,000 cashier's check was proceeds from the fraud perpetrated against Company 6. **CLEMENT** intended this transaction to conceal or disguise the nature, location, source, ownership, or control of the fraud proceeds.

On September 13, 2017, Company 1 received an email from **Co-conspirator B**, who posed as a representative of Company 3—another one of Company 1's vendors. In this email, **Co-conspirator B** falsely represented that Company 1 was past due on payments owed to Company 3.

On September 30, 2017, **CLEMENT** obtained a cashier's check worth $100,000 from Citibank x3978 (the Citibank x3978 Lexcinno account)—which was proceeds from the fraud perpetrated against Company 6—and provided that check to **Co-conspirator D**, who deposited the cashier's check into Capital One x4148 (the Kinson Shoes account). **CLEMENT** also obtained two cashier's checks with funds totaling $100,000 from Citibank x4460 (the A-Tech Services account), and deposited the cashier's checks into an account opened at BB&T under the business name Devyn Landmark Contractors LLC ("Devyn Landmark"), another shell company that the co-conspirators registered in Maryland and that was domiciled at **CLEMENT**'s residence.

Also in September 2017, **CLEMENT** deposited $150,000 worth of cashier's checks drawn on funds from Citibank x3978 (the Lexcinno account) into Capital One x5374 (the Kenrose account).

By using shell entities, cashier's checks, and layered transactions to promote the wire fraud scheme and conceal or disguise the nature, location, source, ownership, or control of the fraud proceeds, **CLEMENT** engaged in sophisticated money laundering. In total, **CLEMENT** laundered at least $342,891.

11



SO STIPULATED:

_____
Gregory Bernstein
Assistant United States Attorney

_____
Emmanuel Clement
Defendant

_____
Richard Finci, Esq.
Counsel for Defendant

